UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60257-CIV-SINGHAL

**YANKIEL MARTINEZ ALFONSO**,

        Petitioner,

v.

**CURRENT WARDEN**, Miramar ICE Field
Office, *et al.*,

        Respondents.
_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner's Petition for Writ of Habeas Corpus (the "**Petition**").  (DE [1]).  The Court has reviewed the Petition (DE [1]), Respondents' Response to Order to Show Cause (the "**Response**") (DE [10]), Petitioner's Reply to Respondents' Response to Order to Show Cause (the "**Reply**") (DE [12]), the parties' supplemental briefs (DE [29], [32]), the docket, heard argument of counsel during the March 6, 2026, expedited hearing (the "**Hearing**") (DE [25]), and is otherwise fully advised.  For the reasons below—and in no small part due to Petitioner's counsel's excellent work—the Court **GRANTS** the Petition to the extent it seeks Petitioner's release and **RESERVES** on Petitioner's entitlement to fees and costs under the Equal Access to Justice Act.

## I.  BACKGROUND.

Petitioner is a Cuban citizen who physically entered the United States in March 2022.  *See* (DE [1] at ¶ 38 (alleging entry on March 28, 2022); [10] at 2 (alleging entry on March 1, 2022)).  Upon physical entry, Petitioner was detained and placed into removal proceedings under 8 U.S.C. § 1229a but thereafter released on his own recognizance.

(DE [1] at ¶¶ 39–40; [10] at 2).  Since then, Petitioner has continuously resided in the United States, complied with all immigration directives, and maintains a clean criminal record.  (DE [1] at ¶¶ 38, 43–44, 49).

Petitioner thereafter obtained a government-issued work permit and legal employment as a landscaper, where he worked until his current detention.  *See* (DE [1] at ¶¶ 42, 46).  In addition to obtaining the requisite documents and earning an honest living, Petitioner's 11-year-old daughter left Cuba and joined him in the United States when she was humanitarianly paroled in 2024.  (DE [1] at ¶ 46).  Petitioner is also father to a one-year-old infant who, along with his 11-year-old daughter and his children's mother, resides with Petitioner.  (DE [1] at ¶ 46).

But recently, Petitioner's circumstances took an unfortunate turn.  In compliance with the government's orders, Petitioner attended an immigration hearing on January 27, 2026.  (DE [1] at ¶ 45).  During the hearing and without prior notice, the government dismissed Petitioner's section 1229a removal proceedings, revoked his parole, immediately arrested him, and placed him in expedited removal proceedings.  (DE [1] at ¶¶ 45, 48); 8 U.S.C. § 1225(b)(1)(A)(i).  The government ordered Petitioner's expeditious release that same day, although Petitioner has not yet been removed.  *See* (DE [30-1] (Notice and Order of Expedited Removal dated January 27, 2026)).

Petitioner subsequently petitioned this Court for a writ of habeas corpus, arguing that the government unlawfully designated him for expedited removal and that his detention violates the Immigration and Nationality Act (the "**INA**"), due process, the Administrative Procedures Act (the "**APA**"), and federal regulations.  (DE [1] at 20–23).  Separately, Petitioner seeks an award of costs and fees under the Equal Access to Justice Act ("**EAJA**").  (DE [1] at 24).

The government submits Petitioner is not entitled to relief for two reasons.  First, it argues that the Court lacks jurisdiction under subsections (a)(2)(A)(i) and (g) of section 1252.  Second, the government submits that Petitioner is properly detained under section 1225(b)(1) because the government "encountered Petitioner within 100 air miles of the United States Mexico border, on the same day he entered the United States, determined he was inadmissible, and did not admit or parole him."  Because the Court has jurisdiction and the government unlawfully detained Petitioner under section 1225(b)(1), Petitioner must be released pending removal unless properly re-detained under an applicable statute.

## II.    JURISDICTION.

Congress has substantially limited judicial review of immigration matters.  *See generally* 8 U.S.C. § 1252.  Relevant here are subsections (g) and (a)(2)(A)(i)–(iii) of section 1252.  These provisions are considered in turn.

### A.  Section 1252(g).

Section 1252(g) provides:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Section 1252(g) must be read "narrow[ly]," *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999), and "bars only those claims that directly relate to the '. . . specific actions' it lists," *Camarena v. Director, Immigr. and Customs Enforcement*, 988 F.3d 1268, 1273 (11th Cir. 2021) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)).  While Petitioner's detention is related to the government's decision to commence removal proceedings and perhaps even execute the removal order

3

against him, it is not "directly related" to same and thus jurisdiction is not barred by section 1252(g).  *See generally Jennings*, 583 U.S. 281 (adjudicating petition for habeas corpus challenging mandatory detention under 1226(c) notwithstanding section 1252(g)).  That Petitioner has been detained but not removed since January 27, 2026, underscores the indirect relationship between his detention and removal.  Accordingly, Section 1252(g) does not strip jurisdiction over the instant Petition.

### B.  Section 1252(a)(2)(A)(i)–(iii).

Relevant here, subsection (a)(2)(A) is titled "Review relating to section 1225(b)(1)" and provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—
> **(i)** except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
> **(ii)** except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,
> **(iii)** the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title . . . .

§ 1252(a)(2)(A)(i)–(iii).  As an initial matter, subsection (a)(2)(A)(i) does not apply because Petitioner challenges only his detention, not the "implementation or operation of an order of removal pursuant to section 1225(b)(1)."

While the statute permits limited habeas review of the Attorney General's "invo[cation]" of section 1225(b)(1) as provided in subsection (e), it facially strips courts' jurisdiction altogether to review the Attorney General's "application" of same.  *See* § 1252(a)(2)(A)(ii)–(iii).  And subsection (e), in turn, limits habeas corpus review to whether the petitioner **(1)** "is an alien"; **(2)** "was ordered removed under [section 1225(b)(1)]," and **(3)** "is an alien lawfully admitted for permanent residence, has been admitted as a refugee

under section 1157 of this title, or has been granted asylum under section 1158 of this title . . . ."  § 1252(e)(2)(A)–(C).

Petitioner does not argue he is not an alien, that he is not subject to an order of removal issued pursuant to section 1225(b)(1), or that he has been admitted or granted refugee or asylum status.  Accordingly, section 1252 facially strips this Court's jurisdiction to adjudicate the Petition, such that the only remaining question is whether section 1252 is constitutional.

On that score, Petitioner submits that section 1252(a)(2)(A) does not strip jurisdiction for three reasons.  First, because section 1252(a)(2)(A) "presuppose[s] that § 1225(b)(1) applies," but section 1225(b)(1) does not actually apply.  (DE [29] at 6).  Second, because section 1252(a)(2)(A)'s application would violate due process.  (DE [29] at 4–6).  And third, because section 1252(a)(2)(A) violates the Suspension Clause.  (DE [29] at 3–4).  These arguments are addressed in turn.[1]

### 1.  Section 1252(a)(2)(A) Applies.

Petitioner's first argument misconstrues section 1252(a)(2)(A).  As noted above, clause (ii) insulates even the Attorney General's "invo[cation]" of section 1225(b)(1) from nearly all habeas review while clause (iii) insulates the Attorney General's "application" of same from all juridical review.  *See* § 1252(a)(2)(A)(ii).  Stated differently, the statute insulates from review even the Attorney General's **errant** invocation and application of expedited removal procedures, save for limited exceptions not present here.  § 1252(a)(2)(A)(ii)–(iii).  If Petitioner were correct that section 1252(a)(2)(A) applies only

---

[1] The Court ordered the parties to expeditiously brief section 1252(a)(2)(A)'s constitutionality.  *See* (DE [27]).  Petitioner timely filed an excellent brief.  (DE [29]).  The government, however, failed to comply.  Notwithstanding the time-sensitive and important matters presented in the Petition, the Court *sua sponte* extended the government's deadline to file a response.  The government then filed a brief that failed to address the issues raised in the Court's order (DE [27]) or Petitioner's expedited brief (DE [29]).

when the government correctly invokes and applies section 1225(b)(1), then section 1252(a)(2)(A) would be purposeless.  And because "courts 'must give effect, if possible, to every clause and word of a statute,'" *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)), the Court rejects Petitioner's view that section 1252(a)(2)(A) applies only when the government correctly invokes and applies section 1225(b)(1).

### 2.  The Due Process Clause Does Not Revive Jurisdiction.

Unfortunately for Petitioner, binding Supreme Court precedent forecloses his due process argument.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).  In *Thuraissigiam*, the Supreme Court explained that "aliens who arrive at ports of entry— ***even those paroled elsewhere in the country for years pending removal***—are 'treated' for due process purposes 'as if stopped at the border.'"  *Id.* at 139 (emphasis added).  And for those stopped at the border, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."  *Id.* at 139 (quoting *United States v. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).

Because Petitioner was immediately apprehended and placed into removal proceedings upon physically entering the United States, he is treated as if stopped at the border.  As a result, due process entitles him only to the procedures provided by statute.  Without the benefit of constitutional due process rights that provide a floor below which Congress may not legislate, Petitioner in unable to draw on due process to revive jurisdiction that section 1252(a)(2)(A) otherwise strips.

### 3.  The Suspension Clause Revives Jurisdiction.

The Suspension Clause is not so limited.  It provides that  "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or

6

Invasion the public Safety may require it."  U.S. Const., Art. I, § 9, cl. 2.  The threshold question is whether this constitutional protection—unlike due process—even applies to Petitioner.  *Boumediene v. Bush*, 553 U.S. 723 (2008), however, makes short work of that obstacle.

There, the Court considered whether alien enemy combatants captured in the Middle East and held at Guantanamo Bay's military installation enjoyed habeas corpus rights under the Suspension Clause.  *Id.* at 766–71.  In answering the question in the affirmative, the Court considered three factors: "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ."  *Id.* at 766.  All said, the Court held that the non-citizen, purportedly enemy-combatant aliens who were captured in the Middle East and detained "outside the sovereign territory of the United States" maintained habeas rights, despite the financial and labor costs associated with administering their habeas proceedings.  *Id.* at 766–71.  And if the Suspension Clause extends to *Boumediene*'s aliens, then certainly Petitioner—who was arrested and is civilly detained inside the United States—can invoke the Suspension Clause.  The next question, then, is whether Congress lawfully stripped Petitioner's habeas corpus rights.

When Congress strips habeas jurisdiction, it must provide "an adequate substitute."  *Id.* at 779.  Whatever an adequate substitute may be, it **must** "entitle[] the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law."  *Id.* (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001)).  Moreover, a "habeas court must have the power to order the conditional release of an individual unlawfully detained."  *Id.*  But here, section

1252(a)(2)(A)(ii)–(iii) strips habeas jurisdiction and, with exceptions not relevant here, provides no substitute whatsoever.  *See* § 1252(e).  Indeed, section 1225(b)(1) provides for expedited removal "without further hearing or review."  § 1225(b)(1)(A)(i).  Because section 1252(a)(2)(A) purports to strip Petitioner's habeas corpus rights without providing an adequate alternative, it violates the Suspension Clause as applied to Petitioner and thus is no bar to this Court's exercise of habeas jurisdiction.

## III.   THE MERITS.

Petitioner asks for both his release and fees and costs under the EAJA.  Each request is considered in turn.

### A.  Petitioner is Entitled to Immediate Release.

Unlike section 1225(b)(2)'s broad scope, *see Morales v. Noem*, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026), section 1225(b)(1) applies to a narrow subset of aliens.  It provides:

> [**(b)(1)(A)(i)**] If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is ***arriving in the United States or is described in clause (iii)*** is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.
>
> . . .
>
> **(iii) Application to certain other aliens**
>
> > **(I)      In general**
> >
> > The Attorney General may apply clause[] (i) . . . of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. . . .
> >
> > **(II)     Aliens Described**
> >
> > An alien described in this clause is an alien who is not described in subparagraph (F), ***who has not been*** admitted or ***paroled*** into the

United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been ***physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph***.

§ 1225(b)(1)(A)(i), (b)(1)(A)(iii)(I)–(II) (emphasis added).

There are several problems with Petitioner's section 1225(b)(1) detention. To come within section 1225(b)(1)(A)(i)'s mandatory removal scheme, the alien must either be "arriving" or be "described in clause (iii)." While Petitioner appears to be an applicant for admission under this Court's prior holding in *Morales v. Noem*, --- F. Supp. 3d ---, 2026 WL 236307, at *9 (S.D. Fla. Jan. 29, 2026), he has been present in the United States since 2022 and thus is not "arriving" in any ordinary sense of the word. Consequently, he only comes within section 1225(b)(1)'s scope if he "is described in clause (iii)."

Clause (iii) excludes aliens who have been "paroled into the United States" and aliens who have "affirmatively shown, to the satisfaction of an immigration officer, that [they] . . . ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to ***the date of the determination of inadmissibility under this subparagraph***." § 1225(b)(1)(A)(iii)(II) (emphasis added). Petitioner does not satisfy either of these requirements.

First, Petitioner was paroled into the United States. *See* (DE [1-4]). When he was detained in March 2022, the government released him on his own recognizance "in accordance with section 236 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. Section 1226. (DE [1-4]). Although counsel for the United States indicated during the Hearing that release on recognizance is not parole, counsel is incorrect.

Section 1226(a) is unambiguous. It provides that, pending "a decision on whether the alien is to be removed from the United States]," "the Attorney General . . . may release

the alien on . . . **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; **_or_ (B)** conditional parole . . . ."   § 1226(a)(2)(A)–(B) (emphasis added).   In other words, that statute provides just two mechanisms for release—bond or parole.   *See* § 1226(a)(2).   Petitioner's release documents reveal that he was "released on [his] own recognizance provided [he] comply with [a series of] conditions," including but not limited to hearings and check-ins; not violating any local, state, or federal laws; not changing places of residence without first obtaining the government's "written permission;" and assisting the government in obtaining any necessary travel documents, presumably as it relates to his removal proceedings.  (DE [1-4]).  As Petitioner was not released on bond, Petitioner's conditional release "on [his] own recognizance" is necessarily a form of parole.  Because Petitioner was paroled, he is not an alien described in clause (iii) and thus not subject to section 1225(b)(1).  *See* § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an . . . who has not been . . . paroled into the United States . . . .").

Furthermore, Petitioner was continuously present in the United States for more than two years immediately preceding a determination that he was inadmissible "under this [section 1225(b)(1)]."   § 1225(b)(1)(A)(iii)(II).   Petitioner's Notice to Appear dated March 3, 2022, reveals no findings concerning his inadmissibility under section 1225(b)(1).   Indeed, it does not even provide that Petitioner attempted to fraudulently secure an immigration benefit, misrepresented that he was a U.S. citizen, or did not possess one of several enumerated immigration documents.   *See* (DE [1-4]).   At least one such violation was required to trigger section 1225(b)(1).   *See* § 1225(b)(1)(A)(i) (requiring a violation of either section 1182(a)(6)(C) or 1182(a)(7)).   Those determinations were made nearly four years later when the government arrested Petitioner on January

27, 2026.  *See* (DE [30-1] (Petitioner's Notice and Order of Expedited Removal)).  But "[a]t the time of arrest, Petitioner was already inside the United States for more than two (2) years."  (DE [1] at ¶ 49; [10] (Respondents conceding that "[t]he relevant facts are not in dispute.")).  Consequently, Petitioner was not within section 1225(b)(1)'s temporal reach when detained.[2]

Because Petitioner was both paroled and continuously present in the United States for more than two years when detained on January 27, 2026, his detention under section 1225(b)(1) is unlawful.

### B. The Court Reserves on Petitioner's Entitlement to Fees and Costs Under the Equal Access to Justice Act.

Finally, Petitioner asks the Court to award fees and costs under the EAJA. Because neither Petitioner nor the government briefed Petitioner's entitlement to same— including whether the government's position was "substantially justified"—the Court reserves judgment on Petitioner's motion for fees and costs pending briefing on same.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Petition (DE [1]) is **GRANTED IN PART** and **RESERVED ON IN PART** as follows:

1. Respondents are **ORDERED** to immediately release Petitioner from detention under to 8 U.S.C. § 1225(b)(1);

2. This Order is without prejudice to Petitioner's re-detention under an applicable statute;

---

[2] The Court recognizes that Section 1225(b)(1)(A)(iii)(II) places the burden on the alien to demonstrate "to the satisfaction of an immigration officer" that he has been continuously present for more than two years. Although the record does not indicate Petitioner satisfied the immigration officer of this fact, the Court does not find that omission compelling where, as here, the Notice and Order of Expedited Removal does not contain a finding concerning Petitioner's presence and the government concedes Petitioner's continuous presence.

3. Respondents are **ORDERED** to certify that Petitioner was released in compliance with this Order or otherwise re-detained under an appropriate statute no later than **April 25, 2026**;

4. The Court **RESERVES** judgment on Petitioner's entitlement to fees and costs under the Equal Access to Justice Act pending briefing on same;

5. Should Petitioner desire to seek fees and costs under the EAJA, he may file a motion with an incorporated memorandum of law no later than **May 6, 2026**;

6. The Clerk of Court is directed to **CLOSE** this case for **administrative purposes only**, **CANCEL** all hearings and deadlines, and **DENY AS MOOT** and pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 22nd day of April 2026.

_____

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF